AAK, INC., d/b/a Club K2U
Southside, Plaintiff,

v.

CITY OF WOONSOCKET, Defendant.

Civ. A. No. 92–0543L.

United States District Court,
D. Rhode Island.

Aug. 12, 1993.

John W. Dineen, Providence, RI, for plaintiff.

Joseph Carroll, City Sol., Law Dept., Woonsocket, RI, for defendant.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is now before the Court on motion for summary judgment by plaintiff AAK, Inc., doing business as Club K2U Southside ("AAK"). Plaintiff brought this suit under 42 U.S.C. § 1983, claiming that defendant City of Woonsocket's ("City") entertainment license ordinance violates plain-

tiff's rights under the First Amendment by charging a higher fee for an "adult cabaret" license than for other entertainment licenses. The Court agrees that this ordinance is unconstitutional, and therefore grants the motion for summary judgment.

## I. Background

Defendant has not disputed the underlying facts of this controversy. Plaintiff, known as Club K2U, has for some time held valid liquor and entertainment licenses issued by defendant. AAK has applied for and received quarterly entertainment licenses to operate its business, which features "female exotic dancing", or semi-nude dancing. Through the second quarter of calendar year 1992, the fee for an entertainment license was $125.00 per quarter.

In March, 1992, the City amended its ordinances to establish a new entertainment license, called the "adult cabaret" license. The ordinance defines "adult cabaret" as "A night club, bar, restaurant, or similar establishment that regularly or occasionally features live performances that are characterized by the exposure of specified anatomical areas or by specified sexual activities." City of Woonsocket Code of Ordinances Sec. 4–30. As initially passed the ordinance nowhere defined the "specified anatomical areas." After a federal suit not involving the present plaintiff, the City amended its ordinance to add the following definition of "specified anatomical areas":

> As used herein, specified anatomical areas means and includes any of the following: 1) less than completely and opaquely covered human genitals, pubic region, buttocks, anus, or female breasts below a point immediately above the top of the areolae; or 2) human male genitals in a discernibly turgid state, even if completely and opaquely covered.

Ordinance Sec. 4–30(b). The ordinance as amended was adopted April 6, 1992.

The ordinance sets forth four requirements for issuance of new "adult cabaret" licenses:

(1) That the applicant has access to sufficient off-street, privately owned parking for use by patrons. For purposes of determination of sufficiency, one parking space shall be provided for each two patrons. The total number of patrons is to be determined by utilizing the rated capacity of the establishment as determined by the Fire Marshall.

(2) That the premises which is the subject of the application is located a minimum of five hundred (500′) feet from the nearest residential structure[,] a house of worship, or a public or non-public school.

(3) That the premises has in service full ventilation/air conditioning systems for purposes of noise reduction.

(4) There shall be no sexually explicit signage located on the premises.

Sec. 4–32(a). Applicants such as plaintiff, who were already operating such an establishment, are exempt from requirements 4–32(a)(1) and (2), but are required to comply with requirements (3) and (4). The Ordinance also states:

> In considering an application under this Article, the Council may additionally give consideration to any factors consistent with promoting the general welfare of the public.

Sec. 4–34. On April 6 the City also amended Sec. 13–3, the "Fee Schedule" of Chapter 13, entitled "Licenses and Permits", to add the new category of Entertainment license for "adult cabarets", with a fee of $750 per quarter.

After this amendment, the City refused to issue an entertainment license to plaintiff, notwithstanding plaintiff's tendering of the $750.00 quarterly fee in June of 1992, albeit under protest. Plaintiff filed suit in Rhode Island Superior Court asking that a license be issued. Temporary relief resolved that action, which did not raise the First Amendment questions about the amount of the fee. Armed with its license, plaintiff continued to protest the dollar amount of this particular entertainment license, as violative of its First Amendment rights. After paying the $750 fee for the third and fourth quarters of 1992, plaintiff filed this suit. The remedy requested in plaintiff's amended complaint is (1) a declaration that the ordinance is unconstitutional, (2) an injunction barring the City from differentiating among license fees based on

content, and (3) damages in the amount of the difference between the $750 fee being paid by plaintiff and the $125 fee paid by other establishments.

The only ordinance section challenged in this suit is Section 13-3-Entertainment(h) which sets the fee at $750.00 per quarter for adult cabaret entertainment licenses. Entertainment licenses for other dancing are $125.00 per quarter. Sec. 13-3-Entertainment(b). There are 24 quarterly entertainment licenses issued and outstanding, only one of which (plaintiff's) involves the $750.00 fee. An affidavit by the Director of Planning and Development for the City of Woonsocket, provided by defendant, indicates that given the current zoning ordinance of the City, the City is aware of no other areas in the City other than the location of AAK, Inc. where an adult cabaret could be conducted.

Plaintiff brought this action challenging that portion of the ordinance differentiating the license fees, on the grounds that it was an unconstitutional regulation based on the content of expression. Plaintiff now moves for summary judgment, arguing that the ordinance is (1) invalid on its face; (2) invalid as applied to plaintiff; and (3) invalid because it gives unbridled discretion to City officials in determining whether an "adult cabaret" license is required. The parties engaged in oral argument on May 10, 1993, and the matter was taken under advisement. It is now in order for decision.

## II. Discussion

■ Federal Rule of Civil Procedure 56(c) sets forth the standard for ruling on a motion for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In making its determination, the Court views the record "in the light most favorable to the party opposing the motion, accepting all reasonable inferences favoring that party." *Continental Casualty Co. v. Canadian Uni-*

*versal Ins. Co.,* 924 F.2d 370, 373 (1st Cir. 1991). However, where the non-moving party bears the burden of proof on a particular issue, the burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

### A. *Expressive Activity*

■ Defendant apparently does not dispute the fact that the entertainment being regulated by the challenged ordinance is within the ambit of the First Amendment. The Supreme Court has held that even nude dancing "is expressive conduct within the outer perimeters of the First Amendment." *Barnes v. Glen Theatre, Inc.,* — U.S. —, —, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). The semi-nude dancing engaged in at plaintiff's establishment is similarly entitled to First Amendment protection.

### B. *Standard for Evaluating Permit Schemes*

The United States Supreme Court has proclaimed that local governments may regulate First Amendment activities by means of a permitting or licensing scheme. *Cox v. New Hampshire,* 312 U.S. 569, 574-76, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (upholding parade permitting scheme). *See also Forsyth County v. Nationalist Movement,* — U.S. —, —, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101, 60 U.S.L.W. 4597, 4599 (1992) (invalidating permit scheme for use of public property for parades, demonstrations, etc., on grounds that ordinance gave administrator unbridled discretion). Such schemes, however, are subject to constitutional strictures. The permitting scheme "may not delegate overly broad licensing discretion to a government official. Further, any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Forsyth County,* — U.S. at —, 112 S.Ct. at 2401 (citations omitted).

Although the time, place and manner analysis used in *Forsyth* was developed in the context of regulating speech in public forums, the same analysis has been applied to regulation of adult entertainment on private property. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In *Renton*, the plaintiff challenged Detroit's zoning ordinance, which prohibited the location of an adult theater within 1,000 feet of any two other regulated uses or within 500 feet of any residential zone. The Supreme Court upheld the ordinance as a valid time, place, and manner regulation. *Id.* at 47, 106 S.Ct. at 928 ("[S]o-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication."). *See Barnes*, —— U.S. at ——, 111 S.Ct. at 2460 (commenting on application of "time, place, or manner" test to conduct on private property) (also noting that this test embodied much the same standards as set forth in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) for evaluating regulation of conduct containing speech and non-speech elements).

The provision of the ordinance at issue here, requiring a license fee six times that for other entertainment licenses, does not on its surface appear to be a regulation concerning time, place or manner. However, the City asks this Court to view the fee in the context of the entire ordinance, which as a whole implements certain time, place and manner restrictions. The City argues that the licensing fees are valid because of the additional investigation needed to ensure compliance with the regulation's other requirements. Because the Court finds the ordinance invalid even under a "time, place, and manner" test, it will use that more lenient analysis.

### C. *Content Neutrality*

■ The first requirement of a valid time, place and manner regulation is that it must be content neutral. As the Supreme Court has stated, it has long been held that "regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." *Renton*, 475 U.S. at 47, 106 S.Ct. at 928.

■ The ordinance at issue in this case appears on the surface to be content based, differentiating on the basis of the adult content of the establishment's entertainment. However, the Supreme Court has held that ordinances that treat adult theaters differently from other kinds of theaters may in fact be considered content neutral when they are "aimed not at the *content* of the films shown.... but rather at the *secondary effects* of such theaters on the surrounding community." *Id.* at 47, 106 S.Ct. at 929 (emphasis in original).

Other cases have considered regulations concerning the location of adult entertainment businesses under a time, place and manner analysis, as content neutral regulations. *See Acorn Invs., Inc. v. City of Seattle*, 887 F.2d 219 (9th Cir.1989) (district court found that panoram licensing scheme was an attempt to control effects of panorams on crime in the vicinity and not an attempt to regulate the content of the videos shown on the machines, and therefore applied *Renton* test); *11126 Baltimore Blvd. v. Prince George's County*, 886 F.2d 1415 (4th Cir.1989), *vacated* 496 U.S. 901, 110 S.Ct. 2580, 110 L.Ed.2d 261 (1990) (County ordinances content neutral where challenged legislation's preambles and various sections declare they are designed to combat urban blight and protect minors—valid interests unrelated to the suppression of particular speech); *Janra Enters., Inc. v. City of Reno*, 818 F.Supp. 1361 (D.Nev.1993) (zoning regulations which facially do not ban adult entertainment businesses are considered time, place and manner restrictions and are not per se unconstitutional).

■ However, the City in this case has failed to even make the assertion that the ordinance was enacted in order to combat secondary effects associated with "adult cabaret" establishments. The ordinances themselves contain no statement or even suggestion of that purpose. The submissions made by defendant to this Court do not indicate that the secondary effects of these businesses was ever a consideration. Furthermore, de-

fendant's answers to plaintiff's interrogatories admit that the City conducted no investigation of any type prior to enacting this ordinance, and that there have been no special law enforcement problems associated with plaintiff's establishment, the only business fitting the definition of an "adult cabaret" operating in the City. The only justification offered by the City for this ordinance is its interest in "societal order and morality." While that interest can be used to sustain a truly content neutral regulation, *Barnes*, — U.S. ——, 111 S.Ct. 2456 (upholding application of Indiana public indecency statute to bar nude dancing; statute addressed evil of public nudity in general with only incidental effect on expressive conduct), the City cannot regulate the content of expression based purely on its judgment that the particular form of expression is immoral. Given the utter lack of content neutral justification, the Court finds that the ordinance violates the First Amendment on its face, by regulating based on the content of expression.

### D. *Significant Governmental Interest*

■ Even if the City ordinance were considered content neutral, the City has failed to demonstrate that the regulation as a whole is a valid time, place and manner restriction. In order for a content neutral permit scheme to pass constitutional muster, it "must be narrowly tailored to serve a significant government interest, and must leave open ample alternatives for communication." *Forsyth*, — U.S. at ——, 112 S.Ct. at 2401. Furthermore, the government interest being addressed must be unrelated to the suppression of free expression. *Barnes*, — U.S. at ——, 111 S.Ct. at 2462. AAK admits that some restrictions on the time, place and manner of adult entertainment establishments are valid. However, the City has the burden of showing that the restrictions serve a significant government interest. *See Renton*, 475 U.S. at 50, 106 S.Ct. at 930 (holding that City of Renton satisfied burden of proof by relying on studies conducted in other cities).

■ As discussed above, the City cannot rely on its interest in "societal order and morality," because it has not shown that this interest is unrelated to suppression of expression. Generally regulation of adult entertainment establishments is justified because of the government interest in combatting the secondary effects of those establishments. In *Renton*, the Supreme Court found that the zoning ordinance at issue served a substantial government interest to "prevent crime, protect the city's retail trade, maintain property values, and generally protect and preserve the quality of the city's neighborhoods, commercial districts, and the quality of urban life." *Id.* at 48, 106 S.Ct. at 929. The Court stated that "a city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *Id.* at 50, 106 S.Ct. at 930 (quoting *American Mini Theaters*, 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality opinion)). Later cases have also justified regulation of adult entertainment based on the effects on the surrounding community. However, the City must demonstrate that the regulations serve that interest. *Acorn*, 887 F.2d at 221–22 (overturning district court's determination that panoram licensing scheme served substantial interest in combating criminal activity related to panorams, because City had not met its burden of demonstrating particular law enforcement problems related to panorams); *Janra*, 818 F.Supp. at 1363–64 (holding that city may regulate to prevent secondary harms caused by adult businesses, such as increased crime or the creation of a "skid row" area of town, but city failed to present any evidence that regulation addressed those interests).

■ As discussed above, in this case the City has not even alleged that this regulation is justified as a response to the secondary effects of the adult cabaret establishment. The City has not satisfied its burden of demonstrating these regulations serve a substantial government interest. Therefore, the differential license established in connection with this regulation cannot be sustained.

### E. *Licensing Fee*

■ Finally, even if the City had met its burden of showing the validity of some sections of its ordinance, it has failed to show

that the license fee provision is validly related to administration of those regulations.

When a government authority imposes fees or taxes which implicate "fundamental" rights, strict judicial scrutiny is required. *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696, 704 (M.D.Fla.1978) (citing *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974)). A government authority may impose a fee that is incidental to a valid licensing or permitting scheme. However, in such cases the fee must be a "nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question." *Murdock v. Pennsylvania,* 319 U.S. 105, 113–14, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943). The licensing authority bears the burden of showing that the fees are "necessary to cover the reasonable costs of the licensing system, and that the fees were used for no other purpose than to meet those costs." *Bayside,* 450 F.Supp. at 705. Thus, in *Bayside* the district court struck down annual license fees of one thousand two hundred dollars for adult bookstores and adult dancing establishments, inter alia, where the court found that the City's cost projections far exceeded what the City could reasonably expect to need to enforce the licensing provisions. In *Wendling v. City of Duluth,* 495 F.Supp. 1380 (D.Minn. 1980), the district court struck down the $500 yearly fee for licensing of adult bookstores, where the City attempted to justify it as necessary for the enforcement of the City's obscenity ordinance. The Court held that the fee must be related to the administration of the licensing statute itself. In contrast, in *Stokes v. City of Madison,* 930 F.2d 1163 (7th Cir.1991), the Seventh Circuit court upheld Madison's ordinances governing public use of sound amplification devices, which imposed fees of $5.00 plus $0.15 per hour of use for an Electrical Use permit, and $20.00 for a Street Use permit, as reasonably related to the costs of administering the permit system. *Id.* at 1172.

In this case, the City has failed to meet its burden of demonstrating that the $750 per quarter license fee is reasonably related to the costs of administering its adult cabaret ordinance. The City admits that it has no experience with implementing the ordinance's restrictions, because plaintiff is the only adult cabaret in Woonsocket and is exempt from those requirements. The City has provided no estimates of projected man hours for enforcement of the provisions. Plaintiff has shown that there is no evidence at all in support of the differential license fee, and is therefore entitled to summary judgment.

III. Remedy

For the reasons given above, plaintiff's motion for summary judgment is hereby granted. City of Woonsocket Code of Ordinances Sec. 13–3 Entertainment(h), establishing a $750 quarterly license fee for "adult cabaret" licenses, is hereby declared invalid as violating the First Amendment of the United States Constitution. An injunction is not required under these circumstances. Plaintiff is entitled to damages in the amount of the difference between the $750 adult cabaret license fee and the $125 regular entertainment license fee for every quarter in which plaintiff paid the increased fee under protest, plus 12% per annum interest calculated from the date of each payment. *Bass Plating Co. v. Town of Windsor,* 639 F.Supp. 873 (D.Conn.1986).

Plaintiffs also are entitled to costs and an award of counsel fees under 42 U.S.C. § 1988. Any motion for such costs including counsel fees shall be made within thirty (30) days of this decision. The application for counsel fees must be supported by a detailed, contemporaneous accounting of the time spent by the attorneys on this case. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984). After said motion is filed the Court will set the matter down for hearing to determine the precise amount of damages and the amount of costs and counsel fees to be awarded and included in the judgment. No judgment shall enter until those issues are resolved.

It is so ordered.