**MD II ENTERTAINMENT, INC. d/b/a The Fare West, et al., Plaintiffs,**

v.

**CITY OF DALLAS, TEXAS, Defendant.**

No. 3:93–CV–2093–T.

United States District Court,
N.D. Texas,
Dallas Division.

March 3, 1995.

ry was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994) (citations omitted).

Charles Joseph Quaid, Law Office of Jon Sparling, Dallas, TX, Steven Hershey Swander, Law Offices of Steven H. Swander, Fort Worth, TX, for MD II Entertainment Inc., D Burch Inc.

Thomas Craig Sheils, Sweet & Brousseau, Dallas, TX, for Tom Lazanas, Dimitrios Papathanasiou.

Roger Earl Albright, Law Office of Roger Albright, Dallas, TX, for Frank Smith, Kelli Freeman, Diamonds, Brio Restaurants Inc.

Jerry Wayne Biesel, Law Offices Jerry W. Biesel, Dallas, TX, Bruce E. Longenecker, Law Office of Bruce E. Longenecker, Dallas, TX, for OGC Restaurants LLC.

Sangeeta Sharma Kuruppillai, Dallas City Attorney's Office, Dallas, TX, for City of Dallas, Tex.

*ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

MALONEY, District Judge.

Before the Court are the Motions for Summary Judgment of Plaintiffs and the Motion for Summary Judgment of Defendant. The motions are opposed. After considering the motions, the responses, and the reply, the Court is of the opinion that Plaintiffs' motions should be granted and Defendant's motion denied.

This action is a consolidation of several actions brought by existing businesses featuring female striptease against the City of Dallas. Plaintiffs challenge the constitutionality of the city's 1993 amendments to its Dance Halls and Sexually Oriented Businesses Ordinances.

In 1986, the city enacted the Sexually Oriented Business Ordinance, which imposed zoning and licensing requirements on certain businesses, including those featuring dancers appearing in a state of nudity or semi-nudity.

Dallas City Code ch. 41A. A state of nudity was defined as a state of dress which fails to cover opaquely a human buttock, anus, male or female genitals, or areola of the female breast. A state of semi-nudity was defined as a state of dress in which clothing failed to cover no more than the genitals, pubic region, buttocks, and areola of the female breast. Businesses featuring nude or semi-nude entertainment were provided a three year amortization period in which to relocate their establishments according to the zoning ordinances or conform their use to its terms.

At the end of the amortization period, many businesses that had featured nude or semi-nude entertainment began dressing their dancers in a state of simulated nudity. In January 1992, the city amended its Dance Halls Ordinance to add a provision for class D dance halls to regulate businesses featuring dancers in a state of semi-nudity or simulated nudity. Dallas City Code ch. 14. Simulated nudity was defined as a state of dress in which any device or covering, exposed to view, is worn that simulates any part of the genitals, buttocks, pubic region, or areola of the female breast. Licensing and zoning restrictions similar to those imposed on sexually oriented businesses were imposed on class D dance halls.

Plaintiffs operate businesses featuring female dancers wearing opaque, nonflesh-colored pasties covering slightly more than the areolae of their breasts and bikini bottoms to cover their buttocks and pubic regions. This style of dress allowed Plaintiffs' businesses to avoid the zoning and licensing requirements of the class D dance hall ordinance. Instead, Plaintiffs' businesses operate under class A dance hall licenses. A class A dance hall is a location where dancing is permitted three days or more a week. The dance hall ordinance imposes upon class A dance halls no zoning restrictions similar to those imposed on class D dance halls.

On October 13, 1993, the city amended the definitions of nudity, semi-nudity, and simulated nudity in the Sexually Oriented Businesses and Dance Hall Ordinances. Under the amendments, a female dancer would have to cover opaquely all of her breast beneath the areolae to avoid the relevant zoning restrictions. The amendments were enacted without further study to link the regulated activity to the production of deleterious, substantial secondary effects.

Plaintiffs challenge the 1993 amendments under several federal and state constitutional theories. In one, Plaintiffs attack the amendments on First Amendment grounds, contending that they are content-based restrictions. Defendant counters that the amendments are intended merely to reduce deleterious secondary effects of certain erotic businesses. All parties move for summary judgment.

Summary judgment should be entered only where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

An ordinance limiting the areas in which certain businesses may operate is properly analyzed as a time, place, and manner regulation. *Lakeland Lounge of Jackson, Inc. v. City of Jackson*, 973 F.2d 1255, 1257 (5th Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993). Such an ordinance enacted for the purpose of restraining expression on the basis of its content, however, presumptively violates the First Amendment. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986).

Cities may not regulate sexually oriented businesses based on a distaste for the message they communicate, as that would be

content-based infringement of expression entitled to at least some First Amendment protection. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); *Lakeland*, 973 F.2d at 1257. For a regulation to be content neutral, the enacting authority must be predominantly motivated by a substantial governmental interest, such as the control or reduction of deleterious secondary effects of the establishment to be regulated. *Renton*, 475 U.S. at 47, 106 S.Ct. at 928; *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968).

■ Plaintiffs contend that the city has failed to show that a substantial governmental interest was the predominant factor motivating it in enacting the amendments. Plaintiffs point out that the city made no findings concerning the purpose or necessity of the amendments and no study indicating a causal connection between the newly created definitions of semi-nudity and the deleterious secondary effects previously identified in enacting the sexually oriented business and class D dance hall ordinances. Additionally, Plaintiffs note that there is no contention by the city that requiring female dancers to wear bikini tops instead of nonflesh colored opaque pasties will reduce any identified secondary effects. Finally, Plaintiffs contend that these latest amendments are nothing more than a measure taken by the city in response to Plaintiffs' previous decisions to dress their dancers to avoid the relevant zoning restrictions and are, thus, merely pretexts for content-based restrictions.

In contrast, the city contends that it enacted the amendments because of a continued concern about the deleterious secondary effects on the surrounding community of sexually oriented dance halls. However, no evidence indicates that the city acted from even this motive. Defendant's sole evidence on

this point is the text of the amendments themselves. However, as Plaintiffs point out, the face and language of the amendments contain no statement of purpose. In essence, the city argues that the amendments are nothing more than the fine tuning of ordinances which have previously passed constitutional scrutiny. *See FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988) (upholding the sexually oriented businesses ordinance against a challenge that it was a content-based regulation), *aff'd in part, rev'd in part*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (reversal irrelevant). Thus, the city seeks to relate the amendments at issue to the constitutionally sound ordinances existing before the amendments.[1]

The Court agrees with Plaintiffs. The Fifth Circuit has upheld a city's zoning ordinance imposing locational restrictions on certain adult businesses where the drafters of the ordinance relied upon studies of secondary effects, a majority of councilmembers received some information regarding secondary effects during an open meeting of the planning board, the language of the ordinance stated both the city's concern with secondary effects and that the ordinance was necessary and expedient to address the city's concerns, and nothing in the record suggested impermissible motives on the part of the council in enacting the ordinance. *Lakeland Lounge of Jackson, Inc. v. City of Jackson*, 973 F.2d 1255, 1258–59 (5th Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993). In contrast, no evidence indicates that the drafters of the 1993 amendments relied upon any studies indicating their necessity or effectiveness.[2] No evidence indicates that the drafters or the city council considered any study attempting to link semi-nude dancing to the production of secondary effects previously linked to sexual-

---

1. The city also briefly contends that it merely amended the relevant definitional sections of the ordinances so that they would conform to the definition of nudity contained in the Texas Penal Code. However, the section of the penal code relied upon by the city is concerned with defining employment harmful to children and is irrelevant to this action. *See* TEX.PENAL CODE ANN. § 43.251(a)(6) (Vernon 1994).

2. In contrast, in enacting the 1992 amendments to the Dance Halls Ordinance to impose zoning restrictions on class D dance halls, the city referred to evidence documenting deleterious secondary effects associated with "certain dance halls" and stated that the city desired to control and minimize these adverse effects. *See* Defendant's Motion for Summary Judgment and Brief 13–14 (February 3, 1995).

ly explicit conduct.[3] *Cf. Renton,* 475 U.S. at 52, 106 S.Ct. at 931 (upholding ordinance shown to affect only theatres which are shown to produce secondary effects); *see also AAK, Inc. v. City of Woonsocket,* 830 F.Supp. 99, 104 (D.R.I.1993) (striking down, under a *Renton* analysis, a licensing fee provision regarding adult cabarets because the city had failed to demonstrate that the provision served its proffered interest). No evidence indicates that the city conducted public meetings to consider any information regarding semi-nude dancing, deleterious secondary effects, or the relationship of the two. Although in its summary judgment evidence the city offers a report prepared by The Malin Group about the secondary effects of sexually oriented businesses, the city council could not have considered this report in enacting the amendments because the study was prepared after their passage. *See MD II Entertainment, Inc. v. City of Dallas,* 28 F.3d 492, 496 n. 21 (5th Cir.1994) (noting that the city council could not have considered the affidavit of a member of a real estate consulting firm in which the member testified to a link between certain advertising and the depression of property values in enacting disputed amendments because the affidavit was prepared after the passage of the amendments). Additionally, the amendments themselves contain no preamble or statement of purpose as in *Lakeland.*

While a city's interest in curbing demonstrated secondary effects produced by certain kinds of sexually oriented businesses has been held sufficient to support certain zoning and licensing restrictions, no evidence indicates that a requirement that dancers wear bikini tops instead of pasties will reduce deleterious secondary effects. *AAK, Inc.,* 830 F.Supp. at 104. It is also possible that aspects of Plaintiffs' businesses other than the wearing of pasties, such as billboards, advertising, and the serving of alcohol, are related to the production of secondary effects ostensibly targeted by the city. In enacting amendments aimed solely at the dancers'

attire, the city has thus ignored other possible contributing factors. *See, e.g., MD II Entertainment,* 28 F.3d at 498 ("[T]he City of Dallas could have avoided this adverse ruling if it has adopted regulations such as that for 'simple signs.'") (Jones, J. concurring).

Considering the search of the justifications offered by the government in restricting protected expression undertaken by the courts in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566–71, 111 S.Ct. 2456, 2460–63, 115 L.Ed.2d 504 (1991) (plurality); *City of Renton v. Playtime Theatres,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986); and *Lakeland,* 973 F.2d at 1258–59, the absence of any evidence that the city considered such justifications for these amendments must prove fatal. *Cf. Christy v. City of Ann Arbor,* 824 F.2d 489 (6th Cir.1987) (striking down zoning ordinance imposed upon nonobscene, erotic bookstore because city failed to meet its burden of showing that more than a rational relationship existed between the ordinance and the proffered governmental interest), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988).

For example, in *Barnes,* the U.S. Supreme Court upheld an ordinance prohibiting totally nude dancing. *Barnes,* 501 U.S. at 571–72, 111 S.Ct. at 2463–64. In so doing, the Supreme Court noted that the First Amendment afforded at least some protection to the expression involved in nude dancing. *Id.* at 565, 111 S.Ct. at 2459. The Supreme Court emphasized that the Indiana ban was directed at the evils of nudity, not at the evils of erotic dancing, and concluded that "Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the state's purpose." *Id.* at 571–72, 111 S.Ct. at 2463. In the instant action, however, the city has gone far beyond a restriction aimed at nudity and a requirement that the dancers wear pasties and G-strings. To maintain their current business locations, Plaintiffs would

**3.** *See, e.g.,* Oral Deposition of Donald R. Postell, Executive Assistant City Attorney, 26–28 (Exhibit C to Motion for Summary Judgment of Plaintiffs' MD II Entertainment, Inc., and D Burch, Inc.); Michael R. Coker, Director of Planning and De- velopment Department for the City of Dallas, Oral Deposition 25–26 (Exhibit C to Motion for Summary Judgment of Plaintiffs' MD II Entertainment, Inc., and D Burch, Inc.).

have to dress their dancers in bikini tops. The new amendments are directed at the essential expressive nature of Plaintiffs' businesses and are content-based restrictions.

As the 1993 amendments are content-based restrictions on protected expression, they are presumptively unconstitutional under the First Amendment. *Lakeland,* 973 F.2d at 1257. Defendant's motion for summary judgment is denied, and Plaintiffs' motions are granted.

Because the Court grants Plaintiffs' motions for summary judgment based on the ground that the 1993 amendments were content-based restrictions, the Court does not consider their remaining grounds for challenging the amendments.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment, filed February 3, 1995, is **denied.**

It is **FURTHER ORDERED** that the Motion for Summary Judgment of Plaintiffs MD II Entertainment, Inc. and D Burch, Inc., filed December 28, 1994, is **granted.**

It is **FURTHER ORDERED** that the Motion for Summary Judgment of Plaintiff Frank Smith d/b/a Sheer D'Lite, filed December 30, 1994, is **granted.**

It is **FURTHER ORDERED** that the Motion for Summary Judgment of Plaintiffs Brio Restaurants, Inc., and Palace Enterprises, Inc., and Kelli Freeman d/b/a Showtime, filed December 30, 1994, is **granted.**

It is **FURTHER ORDERED** that the Motion for Summary Judgment of Plaintiff OGC Restaurants, L.L.C., d/b/a Obsession Gentleman's Club, filed January 3, 1995, is **granted.**

It is **FURTHER ORDERED** that the Motion for Partial Summary Judgment of Plaintiffs–Intervenors Tom Lazanas d/b/a Baby G's, Dimitrios Papathanasiou d/b/a The Doll's House, and Jade Cobble, filed January 3, 1995, is **granted.**

It is **FURTHER ORDERED** that Section 14–1(14) of the Dance Halls Ordinance, Dallas City Code ch. 14, as amended by Ordinance No. 21837, and Section 41A–2(15), (19) of the Sexually Oriented Businesses Ordinance, Dallas City Code ch. 41, as amended by Ordinance No. 21838 are **declared** unconstitutional.