**Opinion issued January 9, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00554-CV

———————————

**GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS, Appellant**

**V.**

**TEXAS BLC, INC., Appellee**

**On Appeal from the 250th District Court**
**Travis County, Texas[1]**
**Trial Court Case No. D-1-GN-17-002768**

---

[1]     This appeal was transferred from the Third Court of Appeals to the First Court of Appeals pursuant to an order of transfer by the Texas Supreme Court. *See* TEX. GOV'T CODE § 73.001. We are unaware of any conflict between the precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

We dismiss this appeal because, in light of a ruling from the federal district court for the Western District of Texas, Austin Division, no ruling from this court can currently affect the rights of the parties and this appeal is thus moot. We write to explain the unusual procedural posture of this case that leads to this conclusion.

In 2007, the Texas Legislature enacted a statute requiring the collection of a $5 per patron fee from businesses that offer live nude entertainment and allow the consumption of alcohol on their premises. TEX. BUS. & COMM. CODE § 102.052(a). Such a business is considered a sexually oriented business ("SOB"). *Id.* § 102.051(2). SOBs are required to self-report and remit the SOB fees. *See* TEX. BUS. & COMM. CODE § 102.053 (requiring SOBs to remit the fee quarterly along with a report "containing the information required by the comptroller").

The Legislature delegated to the Comptroller of Public Accounts responsibility for administration, collection, and enforcement of the SOB fee. *Id.* § 102.056; *see also* TEX. TAX CODE § 111.001 ("Comptroller to Collect Taxes"). The Comptroller is authorized to "adopt rules that do not conflict with the laws of this state or the constitution of this state or the United States for the enforcement of the provisions of this title and the collection of taxes and other revenues under this title." TEX. TAX CODE § 111.002(a).

2

The SOB fee statute became effective January 1, 2008, and it was immediately challenged in state court. *See State of Texas*, 2017 WL 11072005, at *6 (June 2, 2017) (ALJ Proposal for Decision). The Travis County district court held that imposition of the SOB fee violated the First Amendment to the United States Constitution, and it enjoined the Comptroller from assessing or collecting the fee. *Tex. Entm't Ass'n, Inc. v. Combs*, No. D-1-GN-07-004179, 2008 WL 2307196 (345th District Court, Travis County, Mar. 28, 2008) (*Combs I*), *rev'd*, 347 S.W.3d. 277 (Tex. 2011). The Austin Court of Appeals concluded that the SOB fee was a "content-based tax subject to strict scrutiny," and it held that the SOB fee was "unconstitutional under the First Amendment. *See Combs v. Tex. Entm't Ass'n, Inc.*, 287 S.W.3d 852, 864 (Tex. App.—Austin 2009) (*Combs II*), *rev'd*, 347 S.W.3d 277 (Tex. 2011).

The Supreme Court of Texas disagreed that the SOB fee statute was subject to strict scrutiny, concluding that it was "not aimed at any expressive content of nude dancing but at the secondary effects of the expression in the presence of alcohol." *See Combs v. Tex. Entm't Ass'n, Inc.*, 347 S.W.3d. 277, 286, 287–88 (Tex. 2011) (*Combs III*) ("The fee in this case is clearly directed, not at expression in nude dancing, but at the secondary effects of nude dancing when alcohol is being consumed. An adult entertainment business can avoid the fee altogether

simply by not allowing alcohol to be consumed. For these reasons, we conclude that the fee is not intended to suppress expression in nude dancing.").

The Texas Supreme Court evaluated the statute under the four-part test of *U.S. v. O'Brien*, 391 U.S. 367 (1968), which concerns content-neutral restrictions on symbolic speech. 391 U.S. at 377. Under *O'Brien*,

> a government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* The Texas Supreme Court held that the *O'Brien* test was satisfied, in part by concluding that the $5 per patron fee was "a minimal restriction on the businesses." *Combs III*, 347 S.W.3d at 288.

After the 2011 Supreme Court opinion, the case was remanded for the court of appeals to consider the arguments relating to the Texas Constitution, and in 2014, the Austin Court of Appeals upheld the statute against the state constitutional challenges. *Tex. Entm't Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 801 (Tex. App.—Austin 2014, pet. denied) (*Combs IV*). The Comptroller then began enforcing the SOB fee. *See State of Texas*, 2017 WL 11072005, at *6 (June 2, 2017) (ALJ Proposal for Decision).[2]

---

[2]  At oral argument, the parties explained that during the protracted pendency of the litigation concerning the constitutionality of the SOB fee statute, the Comptroller

4

The Comptroller's enforcement actions sometimes included businesses that operate as bikini-latex clubs—clubs that serve alcohol and offer live entertainment by women, who are partially covered by latex that is applied to their bodies in a liquid or semiliquid state. The Comptroller contended that these clubs were sexually oriented businesses under the SOB fee statute. The clubs contended that they were not SOBs because their entertainers were covered with clothing or liquid latex that had dried on their bodies, and therefore they were not nude. In some cases, the administrative law judges agreed with the clubs and found that no SOB fees were owed.

In 2017, the Comptroller adopted a rule regarding the sexually oriented business fee ("the SOBF Rule").[3] 34 Tex. Admin. Code § 3.722. The SOBF Rule defined "clothing" as "a garment used to cover the body, or a part of the body, typically consisting of cloth or a cloth-like material. Paint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state are not clothing." *Id.* § 3.722(a)(1). After the adoption of this rule, the administrative law judges began holding in favor of the Comptroller, finding that bikini-latex clubs were SOBs for the purposes of the fee.

---

did not seek collection from bikini-latex clubs because the parties had reached an understanding.

[3] In 2015, Glenn Hegar became the Comptroller, succeeding Susan Combs, who served from 2007 until 2015.

Ordinarily, to assert a challenge that a taxing statute is unlawful, the taxpayer is required to pay the tax under protest and seek a refund. *See* TEX. TAX CODE § 112.051(a) ("If a person who is required to pay a tax or fee imposed by this title or collected by the comptroller under any law, including a local tax collected by the comptroller, contends that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee, the person shall pay the amount claimed by the state, and if the person intends to bring suit under this subchapter, the person must submit with the payment a protest."). However, the Administrative Procedure Act authorizes the filing of a declaratory judgment action to challenge "the validity or applicability of a rule," when "it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." TEX. GOV'T CODE § 2001.038(a). A party can also challenge the constitutionality of a statute or rule under the Uniform Declaratory Judgment Act. *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76 (Tex. 2015).

Texas BLC is an association of bikini-latex clubs and the appellee in this appeal. As an association, it was not subject to the SOB fee. *See* TEX. BUS. & COMM. CODE §§ 102.051–.056. However, under the doctrine of associational standing, on June 19, 2017, it filed an APA suit for declaratory judgment (*Texas*

6

*BLC v. Glenn Hegar*, No. D-1-GN-17-002768) challenging the validity of SOBF Rule, specifically the definition of clothing and its exclusion of materials applied to an entertainer in a liquid or semi-liquid state.[4]

"Courts generally presume that agency rules are valid, so parties who challenge a rule have the burden of proving its invalidity." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). A rule is invalid when it: "(1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Id.* Determining the validity of a rule requires us to construe the statutory language. *See id.*; *Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Med. Examiners*, 254 S.W.3d 714, 719–20 (Tex. App.—Austin 2008, pet. denied).

The issue in the state-court case challenging the validity of the SOBF Rule required the court to determine whether the rule was in harmony with the SOBF statute based on a construction of the statute and the Rule. In the state-court case,

---

[4]    Although not challenged in the trial court or raised on appeal, we note that Texas BLC has standing to sue on behalf of its members by virtue of associational standing. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977)); *Tex. Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, No. 03-18-00261-CV, 2018 WL 6187433, at *4 (Tex. App.—Austin Nov. 28, 2018, no pet.) (mem. op.).

Texas BLC did not challenge the constitutionality of the SOBF Rule, although it could have done so by way of a suit for declaratory judgment. *See Patel*, 469 S.W.3d at 76. On May 14, 2018, the Travis County district court entered final judgment holding the SOBF Rule invalid. On June 6, 2018, the Comptroller filed a notice of appeal, invoking this court's jurisdiction in this appeal.

Meanwhile, on June 19, 2017, the same day the underlying case was filed in state court, *Texas Entertainment Association, Inc. v. Glenn Hegar*, No. 1:17CV00594, was filed in the federal district court for the Western District of Texas, Austin Division. TEA, like Texas BLC, is an association of bikini-latex clubs. In the federal case, TEA challenged the constitutionality of the SOBF Rule under the U.S. Constitution. While this appeal was pending, in February 2019, the federal district court granted partial summary judgment in favor of TEA, finding that the Rule was unconstitutional under the First Amendment.

The federal district court began its analysis by declining to consider a challenge to the constitutionality of the SOBF statute because the Texas Supreme Court has already considered that and found the statute withstands constitutional scrutiny. *See Combs III*, 347 S.W.3d at 277. The federal district court found, however, that the SOBF Rule was a content-based restriction, not a content-neutral restriction. Slip op. at 20–22. In reaching that conclusion, the federal court stated: "By defining the word 'clothing' to not cover the latex worn in latex clubs, the

8

Comptroller expanded the application of the fee to businesses not previously taxed, and then tried to recover fees based on that expanded coverage." Slip op. at 20.

The court also relied on *MD II Entm't, Inc. v. City of Dallas, Tex.*, 935 F. Supp. 1394, 1396 (N.D. Tex. 1995), *aff'd sub nom.*, *MD II Entm't, Inc. v. City of Dallas*, 85 F.3d 624 (5th Cir. 1996). In *MD II*, Dallas amended a zoning ordinance relating to sexually oriented businesses. 935 F. Supp. at 1396. The amendment changed the definition of nudity. *Id.* Before the amendment a female dancer who covered her areola opaquely was not considered nude, but after the amendment, a dancer would be required "to cover opaquely all of her breast beneath the areolae to avoid the relevant zoning restrictions." *Id.* The zoning ordinance thus expanded the definition of nudity but did so without evidence of a link to secondary effects that could be curbed by the expanded definition. *Id.* at 1397–98. The court struck the Dallas zoning amendment as a content-based restriction. *Id.* at 1399.

The federal district court in the *TEA* case concluded that the SOBF Rule was likewise a content-based restriction because the Comptroller adopted it without "reference to or concern for mitigating any identified secondary deleterious effects," and it further concluded that the SOBF Rule was "directed at the essential expressive nature of latex clubs' business, and thus is a content-based restriction." Slip op. at 22.

The court also concluded that if the Rule were considered content-neutral, it would nevertheless fail the *O'Brien* test. Slip op. at 23. The *O'Brien* test requires that the regulation be justified by a substantial governmental interest. *See* 391 U.S. at 377. The Comptroller asserted two substantial governmental interests advanced by the SOBF Rule: (1) reducing the secondary effects of adult businesses and (2) managing fiscal operations through assessing, administering, and collecting taxes. Slip op. at 24. The court rejected the first reason because the Comptroller provided no evidence that the SOBF Rule reduced the secondary effects of adult businesses in any way different from the statute itself, and it rejected the second reason, saying the SOBF Rule "expands" the statute. *Id.* The federal district court wrote:

> The amended rule also does not serve the second asserted interest. The amended rule expands—or clarifies—the application of the $5 fee statute. It speaks to the imposition of the fee itself; it is not a rule that merely assists in the administration or collecting of an otherwise valid fee or tax. If this asserted interest is sufficiently substantial to justify the amended rule, then any fee or tax furthers a substantial government interest merely by existing, no matter what it seeks to regulate or why. Such expansive and tautological reasoning must be rejected, particularly so where the issues are of a constitutional dimension.

*Id.* (internal citations omitted). By holding the Rule unconstitutional, the federal district court has effectively enjoined the Comptroller from enforcing the SOBF statute against bikini-latex clubs, including the members of Texas BLC.

This brings us to the unusual procedural posture of this appeal. The federal district court has already determined the sole issue in this case: the validity of the SOBF Rule.[5] The federal district court construed the SOBF Rule, saying: "By defining the word 'clothing' to not cover the latex worn in latex clubs, the Comptroller expanded the application of the fee to businesses not previously taxed, and then tried to recover fees based on that expanded coverage." Slip op. at 20.

No Texas appellate court has yet construed the SOBF statute's meaning of the terms "clothed," "unclothed," "uncovered," or "clothing." *Cf. Moore v. Sims*, 442 U.S. 415, 429 (1979) ("State courts are the principal expositors of state law."). In our court, the Comptroller has argued that the SOBF Rule is fully in harmony with the statute, which the Supreme Court of Texas has already found to withstand constitutional scrutiny. *See Combs III*, 347 S.W.3d at 278.

The Texas Legislature has provided that all direct review of the validity or applicability of a rule shall be concentrated in the state district courts of Travis County. *See* TEX. GOV'T CODE § 2001.038; *see also Burford v. Sun Oil*, 319 U.S. 315, 326 (1943) (discussing principles underpinning equitable federal abstention).

---

[5] The federal district court also relied on *MD II Entm't, Inc. v. City of Dallas, Tex.*, 935 F. Supp. 1394, 1396 (N.D. Tex. 1995), *aff'd sub nom.*, *MD II Entm't, Inc. v. City of Dallas*, 85 F.3d 624 (5th Cir. 1996), as a white-horse analogous case. But the value of *MD II Entm't* as persuasive authority depends entirely on whether the Comptroller's Rule imposed a new restriction, as the City did in *MD II Entm't*. As we explain in the main text, that is the question presented in this appeal from the state district court judgment.

11

In *Burford*, the United States Supreme Court concluded that federal courts should leave "problems of Texas law to the State court" and that when regulatory questions "so clearly involve[] basic problems of Texas policy," federal courts should exercise "equitable discretion" to permit "Texas courts the first opportunity to consider them." 319 U.S. at 332.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court addressed "the notion of 'comity,' that is, a proper respect for state functions. . . ." 401 U.S. at 44. The Court explained:

> This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism" . . . .
>
> The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.*

The United States Supreme Court has identified "three distinct considerations that counsel abstention when broad-based challenges are made to state statutes." *Moore*, 442 U.S. at 428. The first consideration, arising from *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 498 (1941), is "that a federal court will be forced to interpret state law without the benefit of state-court

consideration and therefore under circumstances where a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless." *Moore*, 442 U.S. at 428. The second consideration is "the need for a concrete case or controversy." *Id.* The third consideration is "the threat to our federal system of government posed by 'the needless obstruction to the domestic policy of the states by forestalling state action in construing and applying its own statutes.'" *Id.* at 429 (quoting *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 471 (1945)).

The federal district court's interpretation of the SOBF Rule as expanding the SOBF statute is "a reading" "that is not binding on state courts." *Moore*, 442 U.S. at 428. The federal district court's order did not expressly address the text of the SOBF Rule, any canons of construction, *see* TEX. GOV'T CODE §§ 311.001–.035 (the "Code Construction Act"), or whether the SOBF Rule contravened statutory language, ran counter to the objectives of the statute, or imposed additional burdens, conditions or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 33. The SOBF statute defines "nude" as "(A) entirely *unclothed*" or "(B) *clothed* in a manner that leaves *uncovered* or visible through less than fully opaque *clothing* any portion of the breasts below the top of the

13

areola of the breasts, if the person is female, or any portion of the genitals or buttocks." TEX. BUS. & COMM. CODE § 102.051(1) (emphasis supplied). By defining "nude" in terms of being "unclothed" or "clothed" but with exceptions that leave the specified body parts visible, the question before our court in this appeal was whether the Legislature intended that only fully opaque clothing would suffice to render a business not subject to the SOB fee.

Were we to conclude that the statute imposed the SOB fee when the specified body parts were covered but not with "clothing," then we would necessarily conclude that the Comptroller did not expand the application of the fee to businesses not previously taxed. In other words, we could interpret the statute and the Rule in a manner contrary to the conclusion reached by the federal district court because its order is not binding on us. The federal district court's order is, however, binding on the parties to that case, which includes the Comptroller. And it is this effect of the federal district court's order that renders this appeal moot.

Because the federal district court's decision enjoins the Comptroller from collecting SOB fees from bikini-latex bars, including the members of Texas BLC, there is no live controversy between the parties that will actually be resolved by a determination of the validity of the Comptroller's SOBF Rule. *See Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016) ("The mootness doctrine applies to cases in which a justiciable controversy exists

between the parties at the time the case arose, but the live controversy ceases because of subsequent events."). Even if we were to conclude that the SOBF Rule is fully consonant with the SOBF statute, the Comptroller could not collect the SOB fees from the bikini-latex bars that are members of Texas BLC because the federal district court order prevents it from doing so.

"A declaratory-judgment action does not give a court jurisdiction 'to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication.'" *Tesco Corp. (US) v. Steadfast Ins. Co.*, No. 01-13-00091-CV, 2015 WL 456466, at *2 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015, pet. denied) (mem. op.) (quoting *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 130–31 (Tex. App.—Austin 2007, no pet.)). We are not authorized to issue an advisory opinion. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444.

Accordingly, we dismiss this appeal. All pending motions are dismissed.


                                        Peter Kelly
                                        Justice

Panel consists of Justices Kelly, Hightower, and Countiss.